UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHERYL VERDONE, | : |
| Plaintiff | : |
| vs. | : |
| AMERICAN GREENFUELS, LLC, et. al. | : |
| Defendant, | : CASE NO. 3:16-cv-01271 (VAB) |

**RULING ON PLAINTIFF'S MOTION TO AMEND COMPLAINT**

Cheryl Verdone ("Plaintiff") filed a Complaint alleging that her former employers, Greenleaf Biofuels, Kolmar Americas, and American Greenfuels, LLC (collectively "Defendants") discriminated against her because of her gender and disability. American Greenfuels filed a 12(b)(6) Motion to Dismiss under Rule 12(b)(6) on October 14, 2016. Defendant American Greenfuels argued that Counts Three, Five, Eight, Nine, and Ten of Ms. Verdone's Plaintiff's Complaint were factually insufficient and should be dismissed. See Def.'s Mot. to Dismiss, ECF No. 48. On June 30, 2017, Ms. Verdone filed a motion to amend her Complaint, seeking to add claims for retaliation under the state and federal Equal Pay Acts. See Mot. Amend, ECF No. 85; Proposed Am. Compl., ECF No. 85-1. For the reasons that follow, Ms. Verdone's motion is GRANTED.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

Cheryl Verdone filed a Complaint with this Court on July 27, 2016. In the Complaint, Ms. Verdone alleged that her former employers, Greenleaf Biofuels, Kolmar Americas, and American Greenfuels, LLC discriminated against her based on her gender and disability. Defendant Greenleaf Biofuels, LLC ("Greenleaf") is a Connecticut limited liability company

1

with its principal place of business in New Haven, CT. Compl. ¶ 6. Kolmar Americas, Inc. ("Kolmar"), a Delaware corporation with its principal place of business at Bridgeport, Connecticut, purchased Greenleaf in 2013. Defendant American Greenfuels, LLC ("American Greenfuels"), also a Delaware limited liability company with its principal place of business in Bridgeport, Connecticut, merged with Greenleaf in December 2015. *Id.* at ¶ 18.

Among the causes of action Ms. Verdone raised in the Complaint were Count Three, which alleged a violation of the Equal Pay Act of 1964, 29 U.S.C. § 206(d), *et. seq.* ("EPA"), and Count Five, which alleged a violation of the Connecticut Wage & Hour Laws Prohibiting Discrimination in Compensation of Wages, Conn. Gen. Stat. § 31-75, et seq. On October 14, 2017, Defendant American Greenfuels ("Greenfuels") filed a Motion to Dismiss under Rule 12(b)(6). In this motion, Greenfuels argued that Counts Three, Five, Eight, Nine, and Ten of Ms. Verdone's Complaint were factually insufficient and should be dismissed. See Def.'s Mot. to Dismiss, ECF No. 48.

In her Complaint, Ms. Verdone alleged that, in June 2012, she worked for Defendant Greenleaf and was managing all of Greenleaf's human resources matters. Compl. ¶ 39. She also alleged that she developed Greenleaf's human resources department. *Id.* at ¶ 40. She further alleged that Kolmar, which invested in and subsequently took control of Greenleaf in 2013, hired Kevin Ovian, a male, as a "Business Director." *Id.* at ¶¶ 13, 57. Kolmar allegedly paid Mr. Ovian $150,000 a year, more than it paid Ms. Verdone. *Id.* at ¶¶ 57, 61. Mr. Ovian's responsibilities included human resources, though he had no experience in human resources. *Id.* at ¶¶ 57, 60. After Kolmar hired Mr. Ovian, Ms. Verdone allegedly "continued to manage human resources for the Defendants, including overseeing all human resources matters handled by Ovian." *Id.* at 61. In August 2014, Mr. Ovian "began to take on human resources projects

without [Ms. Verdone's] involvement." *Id*. at ¶ 63. Ms. Verdone asked Gus Kellogg, the company's Chief Operating Officer, if she was still head of human resources. *Id.* Mr. Kellogg told her Ms. Verdone that her role had not changed after Mr. Ovian's hiring. *Id*. After this, Defendants allegedly "began to exclude [Ms. Verdone] from all high-level management meetings, including meetings related to human resources." *Id.* at ¶ 64. Ms. Verdone alleges that Defendants terminated her on November 13, 2014, and challenges the termination as discriminatory. *Id.* at ¶¶ 85-86. After filing a Complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and receiving a release of jurisdiction, Ms. Verdone filed her Complaint. *Id*. at ¶¶ 93-95.

On October 5, 2016, after a conference with the parties, the Court entered a scheduling order that provided that Ms. Verdone would amend her pleadings by November 4, 2016 and created a discovery deadline of September 29, 2017. See ECF No. 44. On June 30, 2017, Ms. Verdone filed a motion to amend her Complaint, seeking to add claims for retaliation under the federal and state Equal Pay Acts. See Mot. Amend, 1 (citing 29 U.S.C. § 215(a)(3) and Conn. Gen. Stat. § 31-75). In her proposed Amended Complaint, Ms. Verdone labeled these causes of action Counts Eleven and Twelve, respectively.

## II. APPLICABLE LAW

### A. Rule 15

Rule 15 provides that "[t]he court should freely" grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). In considering whether to grant a litigant leave to amend, the Court considers such factors as undue delay, bad faith, dilatory motive, undue prejudice, and futility of amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been to allow a

3

party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith."). "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981) (internal citations omitted).

"In gauging prejudice," a court considers, "among other factors, whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir.2008) (internal citations omitted). "Undue prejudice arises," for example, "when an amendment comes on the eve of trial and would result in new problems of proof." *Id.* (quoting *Fluor Corp.*, 654 F.2d at 856) (internal quotation marks and alteration omitted). Nonetheless, "allegations that an amendment will require the expenditure of additional time, effort, or money do not themselves constitute undue prejudice." *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 174-75 (S.D.N.Y. 2014) (internal citations omitted). Therefore, "the fact that the opposing party will have to undertake additional discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *Id*. (quoting *U.S. ex rel. Mar. Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 889 F.2d 1248, 1255 (2d Cir.1989)). The decision to grant or deny leave to amend under Rule 15(a)(2) is within the trial court's discretion. *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971) (citing *Foman*, 371 U.S. at 182).

One factor the court must consider is the "futility of amendment." *Foman*, 371 U.S. at 182. A proposed amendment is futile if it fails to state a claim that would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Lucente v. Int'l. Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

**B. Rule 16(b)**

Rule 16(b) provides that scheduling orders "must limit the time ... to amend the pleadings." Fed. R. Civ. P. 16(b)(3)(A). Once it is entered, a scheduling order may be modified only for "good cause." Fed. R. Civ. P. 16(b)(4). The policy behind this rule is to "assure[ ] that at some point both the parties and the pleadings will be fixed." *See* Fed. R. Civ. P. 16 advisory committee's notes to 1983 amendment.

The "good cause" inquiry turns on the diligence of the party seeking to modify the scheduling order. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir.2000) ("[A] finding of 'good cause' depends on the diligence of the moving party.") (citations omitted); *accord* Fed. R. Civ. P. 16 advisory committee's notes to 1983 amendment ("[T]he court may modify the schedule upon a showing of good cause if it cannot be met despite the diligence of the party seeking the extension."). "A party is not considered to have acted diligently where the proposed amendment is based on information that the party knew, or should have known, in advance of the motion deadline." *Fresh Del Monte*, 304 F.R.D. at 174-75 (S.D.N.Y. 2014) (Internal citation omitted). The burden of showing diligence rests on the moving party. *See id.*

Recognizing the tension between the standards set by Rules 15 and 16, the Second Circuit has observed that "[t]he district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) ("The primary consideration is whether the moving party can demonstrate diligence. It is not, however, the only consideration.").

As *Kassner* explained, a trial court, even when interpreting Rule 16, may consider not only the diligence of the moving party but also the prejudice to the opposing party. *Kassner*, 496 F.3d at 244. In other words, "[b]y requiring the district court to consider and balance factors other than a plaintiff's diligence, the [Second Circuit] left open the possibility that amendments could be permitted even where a plaintiff has not been diligent in seeking an amendment." *Fresh Del Monte*, 304 F.R.D. at 175 (adding that "many district courts have undertaken a Rule 16(b) good cause analysis that considers prejudice to the opponent in addition to the moving party's diligence."); *Coale v. Metro-North R.R. Co.*, No. 08-cv-1307 (CSH), 2009 WL 4881077, *3 (D. Conn. Dec. 11, 2009) (observing, when finding good cause for amendment largely because it would cause no prejudice to the opposing party, that "[s]cheduling orders are not the Code of Hammurabi.").

## III. DISCUSSION

Greenfuels opposes Ms. Verdone's motion to amend for two reasons. First, Greenfuels argues that Ms. Verdone has not "been denied any right to amend," but rather "elected not to exercise this right" in a timely manner. Def.'s Opp. Mem., ECF No. 87, 6. Greenfuels also argues that Ms. Verdone's proposed amendments are futile because Ms. Verdone has not stated a claim for discrimination under the Equal Pay Acts of Connecticut or the United States. *Id.* at 7. Ms. Verdone responds that there is good cause to amend the scheduling order, Mot. Amend Compl., 3, and that her proposed amendments are not futile, because Ms. Verdone could maintain an action for retaliation under the Equal Pay Acts even if her discrimination claims under the same acts were dismissed, *see* Pl.'s Reply Mem., ECF No. 88, 5. For the reasons that follow, Ms. Verdone's motion to amend is GRANTED.

**A. Good Cause to Amend**

Ms. Verdone argues that there is good cause to permit her to amend her complaint because an amendment would allow the case to be resolved "on its full merits." Pl.'s Reply Mem., 1. Ms. Verdone does not raise additional arguments to support a showing of "good cause." Greenfuels assert that Ms. Verdone's motion to amend is prejudicial because it has already "expended significant time and resources to conduct discovery." Def.'s Opp. Mem. 5. Greenfuels adds that Ms. Verdone has "already informed defense counsel that they will not produce [Ms. Verdone] to provide any additional deposition testimony even if the Motion to Amend is granted by the Court. *Id.* at 6.

The possibility of Greenfuels' additional discovery would not merit denial of Ms. Verdone's motion. As the Second Circuit has observed, the fact that the opposing party will have to undertake additional discovery, "standing alone, does not suffice to warrant denial of a motion to amend a pleading." *See United States ex rel Maritime Administration v. Continental Illinois National Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1255 (2d Cir.1989). If Greenfuels is correct that Ms. Verdone's counsel refuses to produce Ms. Verdone to provide additional testimony, Greenfuels may seek relief from the Court by requesting a discovery conference or, if the conference is unsuccessful, filing a motion to compel. While Defendants' undertaking of additional discovery may be a factor in the Court's assessment of prejudice, "allegations that an amendment will require the expenditure of additional time, effort, or money do not themselves constitute undue prejudice." *Fresh Del Monte*, 304 F.R.D. at 174.

Furthermore, Ms. Verdone is correct that the "policy behind [the rule allowing liberal leave to amend] is that liberal amendment promotes judicial economy by making it possible to dispose of all contentions between parties in one lawsuit." *See Kreisler v. P.T.Z. Realty, L.L.C.*,

7

318 F.R.D. 704, 706 (S.D.N.Y. 2016) (internal citations omitted). From a practical standpoint, Ms. Verdone's retaliation claims under the state and federal Equal Pay Acts would be most efficiently litigated alongside her other claims under those statutes. Considering the Court's interest in judicial economy, Greenfuels' allegations of prejudice, as well as "other relevant factors," *Kassner*, 496 F. 3d at 244, the Court determines that Ms. Verdone has good cause to amend her Complaint.

### B. Futility of Amendments

Greenfuels also argues that Ms. Verdone's proposed amendments—which add Counts Eleven and Twelve—should be dismissed under Rule 12(b)(6) and are therefore futile. Def.'s Opp. Mem, 7. Specifically, Defendants argue that Ms. Verdone's additional counts fail for the same reasons that her Equal Pay Act claims do, and cites its pending motion to dismiss. The Court disagrees.

In her original Complaint, Ms. Verdone raised claims under the Equal Pay Act of 1964, 29 U.S.C. § 206(d) *et. seq.*, and the Connecticut Wage & Hour Laws Prohibiting Discrimination in Compensation of Wages, Conn. Gen. Stat. § 31-75 *et. seq.* Ms. Verdone now seeks to add retaliation claims under each statute. *See* Prop. Am. Compl., Ex. A. to Mot. Amend., ECF No. 85-1. Greenfuels argues that Ms. Verdone's proposed claims fail because Ms. Verdone "has not alleged sufficient facts to support a claim for discrimination under the state or federal Equal Pay Act." Def.'s Opp. Mem., 7 (citing Mot. Dismiss). In its motion to dismiss, Greenfuels sought to dismiss all of Ms. Verdone's claims under the state and federal Equal Pay Acts, arguing that Ms. Verdone did not provide enough facts to show that she performed equal work as male employees who were paid more. *See* Def.'s Mem. in Supp. Mot. Dismiss, ECF No. 49, 8.

8

As an initial matter, Ms. Verdone's failure to state a claim for breach of the Equal Pay Acts would not necessarily result in the dismissal of her retaliation claims. *See Mabry v. Neighborhood Def. Serv.*, 769 F. Supp. 2d 381, 397 (S.D.N.Y. 2011) (observing, in age discrimination case, that "the merits of plaintiff's underlying discrimination claim are not relevant to whether plaintiff's activity is protected."); *Grant v. Hazelett Strip–Casting Corp.*, 880 F.2d 1564, 1569 (2d Cir.1989) ("[T]o establish participation in a protected activity, a plaintiff is required to show not an actual violation of the act, but only that he was acting under a good faith, reasonable belief that such a violation existed.").[1]

Furthermore, Greenfuels is incorrect that Ms. Verdone has failed to state a claim for violation of both statutes. Congress passed the Equal Pay Act in 1963 "to legislate out of existence a long-held, but outmoded societal view that a man should be paid more than a woman for the same work." *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir.1999). To prove a violation of the Equal Pay Act, a plaintiff must first establish the elements of a prima facie case of discrimination. A plaintiff must show that: "i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions." *Id*. at 135 (quoting *Tomka v. Seiler Corp*., 66 F.3d 1295, 1310 (2d Cir.1995)); 29 U.S.C.A. § 206(d)(1); *see also McCullough v. Xerox Corporation*, No. 12-CV-6405L, 2016 WL 7229134, at *2 (W.D.N.Y. 2016) (noting that three factors must be proven to establish a prima facie claim under the EPA). As Greenfuels acknowledges, claims under the Connecticut Equal Pay Act are subject to the same standard as the Federal Equal Pay Act. *Morse v. Pratt & Whitney*, No. 3:10-CV-01126

---

[1] Title VII, the EPA, and the ADEA, all make it unlawful for employers to retaliate against employees for having opposed practices prohibited by those acts. *See* 42 U.S.C. § 2000e–3(a); 29 U.S.C. § 215(a)(3); 29 U.S.C. § 623(d). "The standards concerning the burden and order of proof on such claims are essentially the same under all those acts, and follow the burden-shifting paradigm of McDonnell Douglas." *Dinolfo v. Rochester Tel. Corp.*, 972 F. Supp. 718, 727 (W.D.N.Y. 1997)

9

(JCH), 2013 WL 255788, *11 (D. Conn. Jan. 23, 2013) ("Claims brought pursuant to the Connecticut Equal Pay Act are analyzed under the same standard as the Federal Equal Pay Act.").

Greenfuels' objection to Ms. Verdone's Equal Pay Act claims concerns the second prong of this three-part test. *See* Def.'s Mem. in Supp. Mot. Dismiss, 8. Under this prong, a plaintiff must prove that she performed "equal work" which required "equal skill, effort, and responsibility" and was "performed under similar working conditions." *Belfi*, 191 F.3d at 135. The Second Circuit has observed that:

> [E]qual skill is defined as including such factors as experience, training, education, and ability, as measured in terms of the performance requirements of the job at issue. Equal effort, by turn, looks to the measurement of the physical or mental exertion needed for the performance of a job. And equal responsibility turns on the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation.

*Equal Employment Opportunity Comm'n v. Port Authority of N.Y. and N.J.*, 768 F.3d 247, 255 (2d Cir. 2014). Jobs that require "equal work" need not be identical, as long as the jobs are "substantially equal." *Hodgson v. Corning Glass Works*, 474 F.2d 226, 234 (2d Cir. 1973) (internal quotation marks omitted), *aff'd sub nom. Corning Glass Works v. Brennan*, 417 U.S. 188 (1974). Substantial similarity is not based on mere "overlap in titles or classifications." *Port Authority of New York and New Jersey*, 768 F.3d at 255. Instead, a female employee's "actual job content" must be substantially equal to her male comparators. *Id.*

A plaintiff may state a claim if she alleges that she was paid less than an employee whose job was substantially similar, even if the male employee takes on "inconsequential" additional tasks. *See Hodgson*, 474 F.2d at 234 (finding that the work done by male night inspection workers and female night inspection workers was substantially equal, even though some of the men on the night shift were required to perform some additional "utility work"). The court in

*Hodgson* determined that the male employee's additional duties were "inconsequential" to the Equal Pay Act analysis because the defendant employer "considered the utility work of so little consequence that these tasks were not included in the job descriptions of any of the inspectors." *Id*.; *see also Rizzo v. Kraus Organization*, No. 10–CV-272, 2010 WL 2427434, *3 (E.D.N.Y. 2010) (despite "relatively minor" differences in positions, such as evidence that a male attorney performed legal research and the female attorney "interpreted" the research, female attorney met her pleading burden by asserting that she and the male attorney both "performed research and advocacy for the defendants before administrative bodies.").

Nevertheless, a plaintiff must do more than suggest that "some overlap exists" between her job duties and those of the men with whom she works. *See Abdullajeva v. Club Quarters, Inc*., No. 96CIV.0383 (LMM), 1996 WL 497029, at *5 (S.D.N.Y. Sept. 3, 1996) ("[P]laintiffs must demonstrate that the overall job they perform is substantially equal to a male employee's job, and not merely that certain component parts are the same."); *see also Doria v. Cramer Rosenthal McGlynn, Inc*., 942 F.Supp. 937, 942 (S.D.N.Y.1996) (observing, when granting summary judgment, that "when the additional tasks of one job in comparison to another job are substantial, then jobs are not congruent and the work is not equal.). The plaintiff must make specific allegations "about the actual content of the work done" and cannot reset on "broad generalizations drawn from job titles and divisions." *Port Auth. of New York & New Jersey*, 768 F.3d at 256 (granting motion for judgment on the pleadings under Rule 12(c)).

The fact that an employer intends to assign different responsibilities to the plaintiff and her male comparator is "inconsequential if, in fact, their actual responsibilities were the same." *Corpes v. Walsh Constr. Co*., No. 3:14-CV-181 (MPS), 2015 WL 5331725, at *5 (D. Conn. Sept. 14, 2015) (*citing Port Auth. of New York & New Jersey*, 768 F.3d at 255). In *Corpes*, the

plaintiff was an Administrative Assistant, Cost Engineer Assistant, and, later, a "Project Administrator." *Id*. She alleged that her job was "substantially equal" to that of Mr. Fagan, a better paid "Project Accountant." *Id*. The Court determined that the two positions "required the same duties and involved the same content," so that "any differences in titles [we]re immaterial." *Id*. The Court emphasized that the two employees "assisted one another, worked together, and communicated with each other multiple times per day." *Id*. at *2.

While the question is a close one, Ms. Verdone has stated a claim under the Equal Pay Act with regard to one employee of Defendants, Mr. Ovian. Ms. Verdone alleges that her workload overlapped substantially with Mr. Ovian's, because Mr. Ovian had a "management position concerning human resources" and she and Mr. Ovian handled human resources projects jointly. *See* Compl. at ¶¶ 57-63. She alleges that, until August 2014, she continued to perform human resources tasks despite Mr. Ovian's occupation of the Business Director position, and that Mr. Kellog told her that he role had not change despite Mr. Ovian's hiring. *Id.* at ¶¶ 61- 63. Like the plaintiff in *Corpes*, Ms. Verdone and Mr. Ovian "assisted one another, worked together, and communicated," 2015 WL 5331725 at *2, and "both managed Greenleaf's human resources matters after Ovian was hired." Pl. Opp. Mem., ECF No. 54, 4. While Defendants gave Mr. Ovian the title of "Business Director" rather than "administrator," substantial similarity is not based on "titles or classifications." *Port Auth. of New York and New Jersey*, 768 F.3d at 255.

Greenfuels argues that Ms. Verdone "merely alleg[es]" that Mr. Ovian's position as "Business Director" included human resources, and that such allegations are insufficient to state a claim upon which relief can be granted. Def.'s Mem. in Supp. Mot. Dismiss, 3-4. As Greenfuels correctly contends, a plaintiff must provide more than "scant information" to state a claim under the Equal Pay Act. *Adams v. Northstar Location Servs*., LLC, No. 09CV1063, 2010

WL 3911415, at *6 (W.D.N.Y. Oct. 5, 2010). "Even at the motion to dismiss stage, vague, conclusory, and speculative allegations will not save an Equal Pay Act claim." *Id.* (*citing Bass v. World Wrestling Fed'n Entm't, Inc.*, 129 F.Supp.2d 491, 503 (E.D.N.Y.2001)); *see also Port Auth. of New York and New Jersey*, 768 F.3d at 256 ("broad generalizations" insufficient to survive motion for judgment on the pleadings).

Unlike the plaintiff recruiter in *Adams*, who "did not describe her job responsibilities in comparison to the job responsibilities of the male recruiter," *see id.*, or the plaintiff body builder in *Bass*, who stated merely that "[u]pon information and belief, [she] was paid lower wages than males performing comparable work," *Bass*, 129 F. Supp. 2d at 503, Ms. Verdone includes concrete allegations that Defendants paid Mr. Ovian more money than they paid her for doing work that was "substantially similar." She has asserted facts, which this Court must accept as true, that show that she and Mr. Ovian shared many job duties. Ms. Verdone has therefore stated a claim for violation of the state and federal Equal Pay Acts. Counts Three and Five of Ms. Verdone's Complaint therefore should not be dismissed and her motion to amend is not futile on this basis.

## IV. CONCLUSION

For the reasons stated above, Ms. Verdone's motion to amend is GRANTED. Accordingly, Greenfuels' motion to dismiss is DENIED AS MOOT, and may be re-filed to address the amended Complaint.

SO ORDERED at Bridgeport, Connecticut this 24th day of August.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

13